**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MERIDETH L. PAYNE,

                              Plaintiff,

       - v -                                    Civ. No. 6:11-CV-322
                                                            (RFT)

MICHAEL J. ASTRUE, Commissioner of Social
Security Administration,

                              Defendant.

**APPEARANCES:**                                    **OF COUNSEL:**

OFFICE OF PETER W. ANTONOWICZ        PETER W. ANTONOWICZ, ESQ.
Attorney for Plaintiff
148 West Dominick Street
Rome, New York 13440

SOCIAL SECURITY ADMINISTRATION        DENNIS J. CANNING, ESQ.
Attorney for Defendant                                   ROBERT R. SCHRIVER, ESQ.
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE, United States Magistrate Judge**

**MEMORANDUM-DECISION and ORDER**[1]

In this action, Plaintiff Meredith L. Payne moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB"), Period of Disability ("POD"), and Supplemental Security Income ("SSI").[2] Based upon the following discussion, the Commissioner's decision denying Social Security benefits is **affirmed**.

---

[1] On November 16, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have this Court exercise full jurisdiction over this matter. Dkt. No. 18.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 12 & 19.

## I. BACKGROUND

Payne, born December 3, 1984, protectively filed an application for POD, DIB, and SSI on July 22, 2008, claiming an inability to work as of December 24, 2005, due to a variety of medical conditions, including, but not limited to, neurological impairment, lower back pain, cellulitis, and depression. Dkt. No. 6, Admin. Transcript [hereinafter "Tr."] at pp. 27, 92–102, 108, & 113. Payne obtained a GED and had work experience as a personal aide, residential counselor, and sales assistant. *Id*. at pp. 114 & 120. The disability applications were denied on initial review. *Id*. at pp. 48–56. On February 24, 2010, a Hearing was held before Administrative Law Judge ("ALJ") Robert E. Gale (Tr. at pp. 23–47), who, on March 22, 2010, issued an unfavorable decision finding that Payne was not disabled (Tr. at pp. 10–22 ). On February 1, 2011, the Appeals Council concluded that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id*. at pp. 1–3. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

## B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id.* at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 404.1520 & 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her

physical or mental ability to do basic work activities. *Id.* at §§ 404.1520(c) & 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at §§ 404.1520(d) & 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[3] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. §§ 404.1520(e) & 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(f) & 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id*.; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's

---

[3] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Gale's Findings

Payne appeared at the Hearing with counsel and was the only witness to testify. During the Hearing, she was questioned by her counsel and the ALJ. Tr. at pp. 23–47. In addition to such testimony, the ALJ had Payne's medical records consisting of treatment reports and opinions from various treating and/or examining physicians. *Id.* at pp. 204–509.

In order for an individual to qualify for DIB, her disability must have commenced at a time when she met the insured status requirements as provided by the Social Security Act. 42 U.S.C. §§ 423(a)(1)(A) & (c)(1); 20 C.F.R. §§ 404.130 & 404.315(a). Here, ALJ Gale determined that Plaintiff met the insured status requirements through March 31, 2009. Tr. at pp. 13 & 15. Thus, DIB could only be paid if Plaintiff showed that prior to this date, she was unable to perform any substantial gainful work due to a medically determinable impairment.

For an individual to be eligible for SSI, she must meet the income and resource requirements of the Social Security Act. 42 U.S.C. §§ 1382a & 1382b. Furthermore, SSI benefits are not payable for any month before the month in which the application for such benefits is filed. 20 C.F.R. § 416.335. Thus, for purposes of SSI, Payne must establish disability during the period of July 22, 2008 (her protective filing date) through March 22, 2010 (the date of the ALJ decision).

Using the five-step disability evaluation, ALJ Gale found that: 1) Payne had not engaged in any substantial gainful activity since December 24, 2005, the alleged onset disability date; 2) she has severe medically determinable impairments, namely status post right ankle reconstructive surgery and

degenerative disc disease of lower thoracic and lumbar spine, but her other impairments, including her alleged mental impairments, were not severe;[4] 3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) she retains the RFC to effectively perform the full range of sedentary and a limited range of light work, and although she had no relevant past work;[5] 5) she could perform other work that exists in the national economy. *Id.* at pp. 15–22.

After reviewing the administrative transcript, the Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence of record.

### D. Payne's Contentions

Plaintiff contends that the ALJ committed several errors in his decision denying benefits. Overall, she complains that the decision is not supported by substantial evidence. More specifically, Payne contends that the ALJ erred when (1) at Step Two he failed to find that her mental impairments are severe; (2) he improperly evaluated her credibility and allegations of pain; and (3) he erroneously determined that she retained the ability to perform light and sedentary work, and such assessment failed to consider the effects of pain, medication, and mental impairments. *See generally* Pl.'s Br.

*1. Step Two – Severe Mental Impairment*

Plaintiff claims that the ALJ erred when he determined that the record lacked medical evidence

---

[4] ALJ Gale determined that Payne's intermittent elevated blood sugar reading, obesity, asthma, cellulitis in right leg, neurological impairment, auditory impairment, post laparoscopic cholecystectomy, adjustment disorder, anxiety, and depression were not severe impairments.

[5] According to the Regulations, a claimant's past work experience is relevant to the disability review because it establishes the skills and abilities the claimant has acquired. 20 C.F.R. §§ 404.1565 & 416.965. To be considered in the evaluation process, the work experience must have been completed in the fifteen years prior to the time the disability application is being decided, provided the work experience "lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. §§ 404.1565(a) & 416.965(a). The ALJ stated, without elaborating, that Payne had no relevant past work experience, and cited to the relevant sections in the Regulations. *Id.* at p. 20 (citing 20 C.F.R. §§ 404.1565 & 416.965).

of Payne's anxiety, adjustment disorder, and depression. Pl.'s Br. at pp. 20–21. Instead, Payne contends that the record is replete with references to her depression and, furthermore, the consultive psychiatric examination conducted by Jeanne Shapiro, Ph.D., supports her contention that her mental disorder "significantly limits" her ability to do basic work activities. *Id*.

At Step Two of the disability evaluation, the ALJ must determine whether the individual has an impairment or combination of impairments that are severe. 20 C.F.R. §§ 404.1520 & 416.920. "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling 85-28, 1985 WL 56856, at *3, *Titles II and XVI: Medical Impairments That Are Not Severe* (S.S.A. 1985)).

When evaluating the severity of claimant's mental impairments, the Regulations require the ALJ to follow a special technique, involving "rat[ing] the degree of functional limitation resulting from the impairment(s)" in the context of "four broad functional areas": (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3) & 416.920a(b)(2), (c)(3); *see also Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008). The first three areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4) & 416.920a(c)(4). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe . . . .'" *Kohler v. Astrue*, 546 F.3d at 266 (citation omitted). However, if the claimant's mental impairment is deemed severe, the ALJ must determine whether the impairment meets or equals the severity of a mental disorder listed in § 12.04 of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

*See* 20 C.F.R. § 404.920a(d)(2).

ALJ Gale considered the evidence and determined that Payne had the following limitations in the four broad areas of functioning: "no restriction in performing activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation." Tr. at p. 17. In rendering this assessment, the ALJ gave limited evidentiary weight to Dr. Shapiro's opinion because he deemed it inconsistent with the record evidence and the results of her examination. *Id*. at pp. 17–18. Instead, significant weight was given to the opinion rendered by A. Hochberg, a State Agency psychologist, whose opinion the ALJ deemed consistent with the record as a whole. *Id*. at p. 18.

In conjunction with her disability applications, Plaintiff was examined by Dr. Shapiro on October 16, 2008. *Id*. at pp. 273–76. Dr. Shapiro opined that Payne

> *may* have difficulty adequately understanding and following some instructions and directions as well as completing some tasks given that she complains of memory deficits. She *may* have difficulty interacting appropriately with others due to social withdrawal. Attending worker [sic] maintaining a schedule may be difficult due to lack of motivation and lethargy. She does not appropriately manage stress.

*Id* at p. 276 (emphasis added).

However, as the ALJ notes, this opinion is not consistent with the examination Dr. Shapiro conducted. Plaintiff reported to Dr. Shapiro that she had no history of psychiatric hospitalizations and was not currently in treatment. *Id*. at p. 273. Payne also reported that she is able to dress, bathe, and groom herself on a daily basis, a sentiment that is mirrored by her testimony at the ALJ Hearing. *Id*. at pp. 42 & 275. She also told Dr. Shapiro that she could do limited light general cleaning, laundry, shopping, manage money, and drive. *Id*. at pp. 275–76. Payne complained that she was depressed and felt "blah," unhappy, unmotivated, lethargic, and isolated. *Id*. at p. 274. But, she acknowledged that she gets along well with friends and family. *Id*. at p. 276. Upon examination, Plaintiff was responsive and

cooperative to questioning, she presented adequate manner and was receptive to language, her "speech intelligibility" was fluent and thought processes were coherent, she appeared sad, yet oriented x3, her attention and concentration were intact, as were her recent and remote memory skills. *Id*. at p. 275. Yet, despite this generally unremarkable treatment history and examination, Dr. Shapiro diagnosed Payne with a depressive disorder, not otherwise specified, and adjustments disorder, and opined that certain limitations <u>could</u> be imposed by these mental disorders. *Id*. at p. 276. The mere existence of a diagnosis, however, is insufficient to show that functional limitations are imposed as a result of the impairments. *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995). Dr. Shapiro's assessment that Plaintiff *may* present with difficulties in functional limitation, does not, in and of itself, establish the existence of such limitations, especially when compared with the results from the examination. Furthermore, the ALJ's assessment is also consistent with the RFC Assessment rendered by A. Hochberg, State Agency Psychologist. *See* Tr. at pp. 288–301. Therefore, we find that the ALJ's assessment that Plaintiff's mental impairments were not severe impairments is supported by substantial evidence.

### 2. *Plaintiff's Credibility and Allegations of Pain*

Plaintiff's physical impairments stem from a gunshot injury to her right leg in 2001 when she was seventeen-years-old. Tr. at pp. 445–62. She underwent muscle transplant, skin grafting, and a nerve transplant. She complains of numbness in the area of the graft and gets recurrent cellulitis on her right leg. *Id*. at pp. 113, 201, & 445–62. She also has problems with the skin graft breaking down, causing cracks in her skin on her heel and forefoot. *Id*. at pp. 113 & 201. Plaintiff argues that the ALJ erred when he determined that her testimony was not credible to the extent she claimed that her pain limits her ability to perform work related functions. Pl.'s Br. at p. 18. In this regard, Plaintiff states

that the ALJ failed to take into account the various treatments Plaintiff has undergone and he improperly evaluated the treating source opinions with regard to Plaintiff's pain. *Id*. at pp. 18–19.

Under 20 C.F.R. §§ 404.1529(a) & 416.929(a), subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Symptoms such as pain are to be considered by the ALJ at all steps of the disability determination. 20 C.F.R. §§ 404.1529(a), (d) & 416.929(a), (d). A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings. *Id*. at §§ 404.1529(c)(4) & 416.929(c)(4). Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work. *Id.* at §§ 404.1529(c) & 416.929(c). "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence." *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987). Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence." *Id*. at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)). In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the

Regulations including:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
> (v) Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
> (vi) Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).

Plaintiff testified that she could not walk further than 100 or 150 feet before needing to stop because of pain. Tr. at pp. 30-31. She further claimed that she could not sit for more than 15-20 minutes, nor stand for more than 5-10 minutes without feeling pain in her lower back and right leg. *Id.* at pp. 31 & 36-37. In a typical day, she claimed to sleep 18-20 hours. *Id.* at p. 41.

In his decision, ALJ Gale states that Plaintiff's testimony concerning the existence of her symptoms was credible, but, her statements "concerning the intensity, persistence and limiting effects of these symptoms are partially credible to the extent they are inconsistent with her activities of daily living, the objective medical evidence, and the opinion evidence of record." *Id.* at p. 19. Plaintiff asserts that the ALJ had no cause to question her credibility and that none of the examining and treating physicians every questioned the accuracy of her complaints nor has any one suggested that she exaggerated her symptoms. Pl.'s Br. at p. 19.

Disability requires more than mere inability to work without pain. *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983) ("To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."). While there are

indications that Plaintiff suffers from pain, substantial evidence supports the ALJ's finding that the limiting effects of Plaintiff's symptoms, including pain, were not entirely credible.

With regard to her activities of daily living, ALJ Gale noted that Plaintiff reported daily activity levels that exceeded her alleged level of functioning. Tr. at p. 19. Specifically, the ALJ noted that Plaintiff claimed she was able to "attend to her personal needs, cook, clean, do laundry, go shopping, manage money with both a checking account and credit card, and drive." *Id*. Furthermore, Plaintiff stated that she "spent her days going to work periodically, watching television, running errands, and doing leg exercises. . . . [and she] testified that she has been working as a personal care aid on a part-time basis for the past 3 years." *Id*.; *see also* Tr. at pp. 135–40. This level of activity is simply inconsistent with the type of disabling pain Plaintiff alleges.

The ALJ further noted that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms are not supported by the medical evidence. Despite Plaintiff's complaints and her assertion that she sleeps for 18-20 hours on a typical day, her strength remained full and there were no reports of atrophy. In an exam conducted in August 2006, approximately six months after the alleged onset disability date, Plaintiff's physical examination was essentially benign, she was neurologically intact, her strength was full and sensation was normal, as were deep tendon reflexes. Tr. at pp. 256–57. A Magnetic Resonance Imaging ("MRI") taken of the lumbar spine over two years later revealed some bulging and disc disease, but there was no spinal stenosis nor nerve root impingement. *Id*. at pp. 271–72. In September 2008, Plaintiff reported to Andrew Milone, P.A., that she had no low back pain. *Id*. at p. 357. On October 16, 2008, Plaintiff was examined by Justine Magurno, M.D., in conjunction with her disability applications. *Id*. at pp. 277–81. The physical examination revealed some abnormalities, however, Plaintiff's strength was full and no motor deficits

nor muscle atrophy were present. *Id*. at pp. 279–80. In January 2009, Plaintiff described her back pain as "up and down" and although she received some benefit from physical therapy, she stopped attending. *Id*. at pp. 386 & 399.

After trying several pain medications that did not work, for one reason or another, Payne began pain management treatment in April 2009 (just past the date she was last insured for DIB) with Advanced Nurse Practioner ("ANP") Debra Dermady. *Id*. at pp. 393 & 397. After receiving an epidural injection in May, which Plaintiff claimed provided no relief, Plaintiff received lumbar facet joint injections in June, which were successful in relieving pain. *Id*. at pp. 397–402. On June 11, 2009, ANP Dermady submitted a clinical assessment of Plaintiff's pain wherein she indicates that pain is "present to such an extent as to be distracting to adequate performance of daily activities or work." *Id*. at p. 397. Upon referral from ANP Dermady, Payne was evaluated in November 2009 by Warren Wolff, M.D., and orthopedic specialist. *Id*. at pp. 439–41. Upon examination, Dr. Wolff noted that Payne's lumbar flexibility was moderately limited secondary to pain, but she had full unobstructed painless range of motion of both hips. *Id*. at p. 440. Dr. Wolff reviewed Payne's MRI and found it to be negative, "with the exception of degenerative desiccation of the L4-5 disc." *Id*. at p. 441. He recommended continued conservative approach. *Id*. On January 28, 2010, ANP Dermady submitted another clinical assessment of Plaintiff's pain, stating that her pain is "present to such an extent as to be distracting to adequate performance of daily activities or work causing [Payne] to be off-task for at least 25% of the time in an 8-hour workday." *Id*. at p. 444. On March 4, 2010, just after the ALJ Hearing, Plaintiff reported to ANP Dermady that she was doing "OK" and was "about 30% better" after using a Fentanyl patch. *Id*. at p. 464.

In weighing the clinical assessments rendered by ANP Dermady, ALJ Gale gave little weight

to the June 2009 assessment because she gave the assessment when her treatment of Payne had just begun and the marked limitations noted were inconsistent with the record evidence. *Id*. at p. 20. As to ANP Dermady's second assessment, ALJ Gale likewise gave limited weight because she had not treated Plaintiff since the June 2009 assessment, and because the marked limitations noted therein were inconsistent with Dr. Wolff's recommended conservative treatment. Plaintiff generally argues that the ALJ erred in failing to accord proper weight to the medical opinions, but, she does not specifically explain what error had transpired, nor has she pointed to substantial evidence in the record that contradicts the ALJ's assessment. Pl.'s Br. at pp. 15 & 19. In light of the above recitation, we find that substantial evidence supports the ALJ's determination that Plaintiff's allegations regarding the disabling effects of her pain are only partially credible when viewed against her recitation of activities of daily living and the objective medical evidence and that he did not err by failing to accord more weight to the opinions rendered by ANP Dermady.

### *2. RFC Assessment*

Plaintiff's final argument seems to be centered around the ALJ's RFC assessment. In sum, Plaintiff asserts that the ALJ erroneously determined that she retained the ability to perform light and sedentary work and that such assessment failed to consider the effects of pain, medication, and mental impairments.

The Regulations direct the Commissioner to assess a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. §§ 404.1545(a) & 416.945(a). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the

limiting effects of all impairments even those not deemed severe. *Id*. at §§ 404.1545 & 416.945.

ALJ Gale determined that Plaintiff had the following RFC:

> [Payne] has the [RFC] to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of 2 hours in an 8-hour workday, and sit for a total of 6 hours in an 8-hour workday. [Payne] can occasionally stoop, crouch, crawl, and climb ramps/stairs, and should avoid concentrated exposure to pulmonary irritants.

Tr. at p. 18.

Contrary to Plaintiff's supposition, in rendering this assessment, it is clear that the ALJ considered Plaintiff's symptoms, testimony, and non-severe mental impairment, as well as the objective medical and opinion evidence. *Compare id. with* Pl.'s Br. at p. 23. To the extent Plaintiff reasserts her arguments regarding the alleged severity of her mental impairment and/or the debilitating effects of her pain in attacking the ALJ's RFC assessment, the Court references the above discussion and finds that such objections are not supportable grounds for undermining the ALJ's RFC determination. Instead, the Court finds that substantial evidence, including the objective medical evidence and the opinions rendered by Drs. Magurno, Wolff, and Hochberg, as well as the State Agency analyst, support the ALJ's RFC conclusion, wherefore, reversal and/or remand is not appropriate.

### III. CONCLUSION

In light of the foregoing discussion, it is clear that in finding Payne was not disabled, the ALJ applied the correct legal standards and his factual findings are supported by substantial evidence. Thus, this Court upholds the Commissioner's decision.

**WHEREFORE**, it is hereby

**ORDERED**, that the Commissioner's decision denying disability benefits is **AFFIRMED**; and it is further;

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order

upon the parties to this action.

**IT IS SO ORDERED**.

Date:   February 12, 2013
        Albany, New York

Randolph F. Treece
U.S. Magistrate Judge